# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| MARION BRYANT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:07-CV-0183-AH |
| | § | |
| R. JAMES NICHOLSON, SECRETARY, | § | |
| UNITED STATES DEPARTMENT OF, | § | |
| VETERANS AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the written consents of the parties and the District Court's order of transfer filed on June 20, 2007, in accordance with the provisions of 28 U.S.C. § 636(c) came on to be considered Plaintiff's motion for summary judgment and Defendant's motion for summary judgment, and the court finds and orders as follows:

SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. An issue is "material" if it involves a fact that may affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or

more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).

BACKGROUND

Plaintiff Marion Bryant("Bryant" or "Plaintiff") brings this suit against Defendant R. James Nicholson ("Defendant") in his capacity as Secretary of the United States Department of Veterans Affairs. Bryant alleges that Defendant discriminated against him based on his race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq. by failing to promote him in favor of a less qualified applicant who was not an African-American. He also alleges that Defendant's failure to promote him was in retaliation for prior EEO activity.

Bryant is currently employed as a GS-8 Dental Technician at the Dallas Central Dental Laboratory ("CDL") at the Department of Veterans Affairs ("VA"). Affidavit of Marion Bryant ("Bryant Aff.") ¶ 1. He has been employed by the Dallas CDL for eight years and by the VA for over 15 years. *Id.*

In October 2004, Bryant applied for the position of Dental Laboratory Technician, a GS-

9 position. *Id*. ¶ 2. On November 2, 2004, Carlos Parades, a Hispanic male, was selected for the position. *See* Def. Ex. 3, VA Merit Promotion Certificate; Bryant Aff. ¶ 4. Juan Gomez and Larry Embry, both supervisors at the CDL, were the selecting officials for the position. Affidavit of Juan Gomez ("Gomez Aff."), Def. Ex. 8, p. 3; Testimony of Larry Embry, Def. Ex. 13, p. 155. On November 8, 2004, Bryant received notification from the VA that he was not selected for the position. Def. Ex. 9.

Gomez and Embry did not conduct interviews of the seven candidates for the position. Gomez Aff., Def. Ex. 8, p. 3. The candidates were asked to participate in an optional skills demonstration of the relevant skill areas: Surveying, Waxing, Duplicate/Invest, Casting and Finishing. *See* Def. Ex. 5, Promotion Checklist; Def. Ex. 6. Gomez and Embry utilized a promotion checklist in the selection process, which detailed the performance of the applicants in the skills demonstration (if they opted to participate), production data, leave balance, time in grade, total service time, and whether each candidate had assisted in tasks outside of their assigned skill area. Def. Ex. 5. The names of all applicants on the checklist provided to Gomez and Embry were whited out and each applicant was assigned a number so that the officials did not know a candidate's name as they were making their selection decision. Testimony of Juan Gomez, Def. Ex. 13, pp. 205-206.

In supervisory selection notes, Bryant's strengths were noted as "proficient in finishing. Dependable in delivery in a rush and time sensitive cases." Def. Ex. 7. His weaknesses were noted as "[u]nobserved in surveying, waxing, Dup/Inv and casting." *Id*. Paredes' strengths were noted as "[p]roficient in all areas (surveying, waxing, duplicate/invest, casting and finishing)[;] far exceeds in production 12/12 months w/ very acceptable quality." *Id*. The sole entry in the

3

weaknesses column was "no serious technical deficiencies observed." *Id*.

In his statement executed on June 6, 2005, Def. Ex. 8, Gomez related that Parades was selected for the position because he maintained a high productivity level in all skill areas, he requested additional work when he completed his assigned tasks, he produced high quality work product and he was willing to work in any area assigned. *Id*. at p. 4. Gomez also noted that Parades' production average for the previous 12 months far exceeded the level required and he had no months in which he failed to meet the expected level, while Bryant had nine months in which he met the requirements and three months in which he failed to meet them. *Id*. Gomez noted that Bryant was not selected for the position because he did not show any capability of working in any area outside his assigned area of finishing, he did not show any interest in working in any of the other areas and he declined to participate in the skills demonstration, which would have demonstrated his skills in other areas. *Id*. at p. 5.

On February 5, 2005, Bryant filed an employment discrimination complaint with the VA, claiming that he was not selected for the GS-9 position because he is an African-American and in retaliation for his prior EEO activity. Def. Ex. 10. With respect to his prior EEO activity, Bryant alleges that he was a witness regarding other employees' EEO complaints in August 2000 and August 2002. Affidavit of Marion Bryant submitted to the VA Office of Resolution Management, Def. Ex. 1, p. 2. Bryant also alleges that he filed a previous EEO complaint in 2004 alleging a hostile work environment. *Id.*, p. 5.[1]

An EEOC administrative judge ("AJ") held a hearing on January 30, 2006 at which

---

[1] Except for Bryant's statements in his EEO affidavit, neither party submitted any evidence of Bryant's prior EEO activity or a copy of Bryant's previous EEO complaint.

several witnesses testified, including Bryant, Gomez and Embry. Def. Ex. 13. On February 23, 2006, the AJ rendered her decision, finding no discrimination. Def. Ex. 11. Specifically, the AJ held that Bryant failed to show that the VA's legitimate, nondiscriminatory reasons for its action were pretextual or that improper motives were the actual reasons for the action taken. *Id.*, pp. 13-15. The AJ further held that Bryant presented no evidence that his qualifications were "observably superior" to those of Parades. *Id.*, p. 14. Bryant appealed the AJ's finding to the EEOC's Office of Federal Operations, which issued a decision on October 26, 2006 affirming the final agency decision. Def. Ex. 12.

On January 29, 2007, Bryant filed this lawsuit contesting the AJ's decision. Bryant filed his motion for summary judgment on November 2, 2007. Defendant filed his response on December 7, 2007. Defendant filed his motion for summary judgment on December 7, 2007. Bryant did not file a response to Defendant's motion.

BURDENS OF PROOF UNDER TITLE VII

Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Because Bryant attempts to prove his discrimination claim by indirect or circumstantial evidence, we apply the familiar *McDonnell Douglas*[2] test. *See also Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089 (1981). Under this analysis, Bryant must first establish a prima facie case of discrimination that, if demonstrated, "creates a presumption that [Defendant] unlawfully discriminated against [him]." *Id*. Second, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action about which he

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 935 S. Ct. 1817 (1973).

5

complains. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742 (1993). Defendant's burden is one of production, not proof, and involves no credibility assessments. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000)). If Defendant meets his burden, then Bryant bears the ultimate burden of proving discrimination under one of two options. Bryant can offer proof sufficient to create a genuine issue of fact either "(1) that Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative) or (2) that Defendant's reason, while true, is only one of the reasons for his conduct, and that another 'motivating factor' is the plaintiff's protected characteristic (mixed motives alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff's "subjective belief that he was not selected for the position based upon race . . . is insufficient to create an inference of the defendant['s] discriminatory intent." *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (citing *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999)).

FAILURE TO PROMOTE CLAIM

Plaintiff and Defendant both move for summary judgment on Bryant's failure to promote claim. Because Bryant will have the burden of proving discrimination at trial, to obtain summary judgment he "must establish 'beyond peradventure all of the essential elements of [his] claim.'" *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Defendant does not bear the burden at trial and, therefore, he is entitled to summary judgment if he points the court to the absence of evidence to support Bryant's claim. *See Celotex*, 477 U.S. at 325. If Defendant does so, then to avoid summary judgment, Bryant must go beyond his pleadings and designate

specific facts showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Bryant can establish a prima facie case on his failure to promote claim by proving that (1) he was not promoted; (2) he was qualified for the position he sought; (3) he was within the protected class at the time of the failure to promote; and (4) either the position he sought was filled by someone outside the protected class or he otherwise was not promoted because of his race. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001) (citing *Burdine*, 450 U.S. at 252-53. It is undisputed that Bryant was not promoted, was qualified for the position, was within a protected class, i.e. an African-American, at the time he was not promoted, and that the position was filled by Parades, who is not an African-American. However, Defendant has asserted legitimate, nondiscriminatory reasons for selecting Parades: (1) he received the highest score in the skills demonstration; (2) he assisted in other tasks in all five skill areas when asked, which was higher than any other candidate, and (3) his productivity was high. Def. Brief, pp. 7-8. Therefore, the issues in this case arise under the third step of the *McDonnell Douglas* analysis – pretext. Under the pretext approach, as discussed above, Bryant must establish that Defendant's reasons are not true but are in fact a pretext for discrimination.

Bryant first attempts to demonstrate pretext by disputing Defendant's contention that Parades' skills and production were superior to Bryant and the other candidates. With respect to Parades' skill, Bryant contends that contrary to Defendant's assertions, Parades' work was technically flawed and of substandard quality. He does not contend that Parades did not, in fact, receive the highest score (100%) on the skills demonstration. Def. Ex. 5, Promotion Checklist. Bryant relies on his own conclusory assertions; however, such "conclusory statements are not

7

competent evidence to defeat summary judgment." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007). Instead, Bryant "must offer specific evidence refuting the factual allegations underlying [Defendant's] reason." *Id*. at 346. Aside from his own personal opinion and photographs claimed to be of dental work completed by Parades, Bryant fails to offer any evidence that Defendant's proffered reasons are not true.

Bryant claims that he has been unable to further document the problems with Parades' work quality or dispute Parades' production figures because Defendant destroyed documents relevant to those issues. Bryant moves for summary judgment, asking the court to invoke the spoliation doctrine and presume that the documents would have shown that Parades' work was not as good nor his production figures as high as Defendant claims.

The spoliation doctrine requires the party invoking it to show that his adversary destroyed or misplaced the evidence in bad faith. *See Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999); *Vick v. Texas Employment Comm.*, 514 F.2d 734, 737 (5th Cir. 1975) ("the adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. . . the circumstances of the act must manifest bad faith"). Therefore, Bryant must show that Defendant acted in "bad faith" to establish that he is entitled to an adverse inference.[3]

Bryant claims that Defendant destroyed in-house "return/remake slips" which are apparently generated when an employee's work product does not meet CDL expectations. The

---

[3] Bryant cites Texas case law on the spoliation doctrine. While federal law, rather than Texas law applies, the result would not be different under Texas case law. The substantive requirement that Plaintiff show that the documents were "deliberately destroyed" at a time that Defendant knew or reasonably should have known that there was a substantial chance that a claim would be filed and that the evidence at issue would be material and relevant to that claim is the same. *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003).

"Promotion Checklist" utilized during the 2004 selection process indicates that Carlos Parades had one return since April 2004 and one remake, while Bryant had no returns and no remakes. Def. Ex. 5. In his requests for production of documents, Bryant requested the return/remake slips for Parades for the time period from March 2003 through April 2004. Plaintiff's App., pp. 4-7. Defendant responded that "[t]hese types of documents are routinely destroyed once the information has been entered into the computer. However, Defendant provides computer printouts for that time period, which shows that there were no returns for any employee." *Id*. Bryant alleges that Defendant had possession of the return/remake slips after he filed his EEO Complaint and after Defendant had reason to know of possible litigation. However, Bryant offers no evidence demonstrating that Defendant had possession of any return/remake slips for Parades after he filed his EEO complaint or that documents were otherwise destroyed in bad faith. Further, Defendant maintains that the return/remake slips were destroyed pursuant to a routine policy. Typically, courts do not draw an inference of bad faith in such circumstances. *Vick*, 514 F.2d at 737. Therefore, he is not entitled to an adverse inference with respect to the non-retention of return/remake slips.

Bryant also claims that Defendant destroyed daily production slips for Parades, which he claims would have shown that Parades was not, in fact, a higher producing employee than he was. He questions the accuracy of Productivity Data Sheets for Parades which were produced by Defendant. Plaintiff's App. 23-32. The data sheets include a notation of "CLV's"or "composite lab values", which are used by the CDL as a measure of a technician's productivity. A CLV represents a six-minute amount of time awarded to each case in terms of the complexity of the case. Embry Testimony, Def. Ex. 13, p. 161. The more complex a piece of work would be for a

technician, the more CLV's are awarded to it. *Id*. Therefore, the CLV measures the amount of time it should take a technician to complete a given task. *Id*.

Bryant notes that Parades' data sheet includes CLV's on days in which he was not present or did not complete any units. *See, e.g.*, Plaintiff's App. 23-32, figures for the following dates: March 12, 2003 (CLV of 162 although no units completed and leave notation); March 18, 2003 (CLV of 149.50 and no units completed); May 29, 2003 (CLV of 139.25 although no units completed and leave notation; June 10, 2003 (CLV of 185.88 although no units completed); January 5, 2004 (CLV of 150.50 although no units completed and leave notation). Bryant requested the back-up for these reports – the daily production slips – however, Defendant responded that, like the return/remake slips, these documents are routinely destroyed after the data is entered into the computer. Plaintiff's App., pp. 4-7.

In an effort to establish that the daily production slips were deliberately destroyed after he filed his EEO complaint, Bryant submitted a June 28, 2005 report by Howard Ray, a supervisory dental lab technician, in which Ray states that he reviewed *Bryant's* daily production sheets for November 2003, December 2003 and January 2004, as well as those for March through June 2005. Plaintiff's App., p. 15. Bryant claims that this memo proves that Defendant maintained daily production slips and did not routinely destroy them and, therefore, he is entitled to a spoliation inference with respect to Parades' production data. However, Bryant submits no evidence that Defendant destroyed *Parades'* daily production slips in bad faith or that *Parades'* slips were not routinely destroyed as Defendant claims. Even assuming the slips were destroyed after Bryant initiated the instant suit, such evidence, standing alone, would not be enough to draw an inference of bad faith. *See Russell v. Univ. of Texas of the Permian Basin*, 234 Fed.

App'x 195, 208 (5th Cir. 2007) (citing *Vick*, 514 F.2d at 737)("we do not automatically draw an inference of bad faith simply because documents are destroyed after the initiation of litigation"). The fact that "hard copy" reports were transferred to a computer printout format further erodes any hint of "bad faith" destruction of daily reports. Therefore, Bryant is not entitled to a spoliation inference with respect to Parades' daily production slips.

Bryant does not address or attempt to rebut Defendant's third reason for selecting Parades, i.e. that Parades assisted in other areas in all five skill areas when asked, which was higher than any other candidate (including Bryant, who, as detailed on the Promotion Checklist, did not assist in any areas outside of his assigned area of finishing). To demonstrate pretext, Bryant "must put forward evidence rebutting *each* of the nondiscriminatory reasons [his] employer articulates." *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001) (emphasis added); *see also Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). The evidence offered to counter Defendant's proffered reasons must be substantial. *Wallace*, 271 F.3d at 220. Where, as here, the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. *See EEOC v. La. Office of Cmty. Servs.*, 47 F. 3d 1438, 1447-48 (5th Cir. 1995).

Bryant's other assertions on the issue of pretext similarly fail to support an inference of discrimination, especially in light of the fact that this was a blind selection process, i.e that the decisionmakers were unaware of the candidates by name when making their selection. First, Bryant claims that he was more qualified than Parades for the promotion, citing his alleged superior skill and his longer years of service with the CDL and VA. The Fifth Circuit has held that a plaintiff may raise a fact question as to pretext by presenting evidence that he is "clearly

11

better qualified" than the employee selected for the position. *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). "In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who listen that he was vastly – or even clearly – more qualified for the subject job." *Id.* (citing *Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993)). Looking at the relevant qualifications for the position at issue, it cannot be said that Bryant's qualifications "leap from the record" when compared to Parades' or render him clearly more qualified. In addition, the Fifth Circuit has rejected the argument that a longer tenure alone suffices to establish pretext. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). The evidence proffered by Bryant is insufficient to raise an issue of fact based upon his alleged clearly superior qualifications to those of Parades.

Finally, Bryant suggests that the fact that the CDL has not promoted any African-American employees to GS-9 positions demonstrates pretext. In his complaint, he alleges that between 2003 and 2004 six African-American employees applied for the two available GS-9 positions and each was denied as "qualified but not chosen." Plaintiff's Complaint, p. 2. Dr. Jones, the Chief of the CDL, testified that the CDL has had at most three GS-9 positions in the 40 years he has been with the lab and now only has two. Plaintiff's proffered statistical data does not create a genuine issue of fact as it does not amount to the "gross statistical disparity" necessary to amount to probative evidence of discrimination. *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1290 (5th Cir. 1994); *see also Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (holding that evidence of Defendant's alleged failure to promote African American males to managerial or supervisory positions does not demonstrate pretext).

Under the summary judgment record before the court, Bryant has failed to demonstrate the existence of a genuine issue of fact – that is, evidence from which a reasonable jury could find that the stated reasons for his non-selection were pretextual or that his race was a motivating factor for his non-selection. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

RETALIATION CLAIM

Defendant also moves for summary judgment on Bryant's retaliation claim. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Where, as here, a plaintiff offers only circumstantial evidence of causation, the court applies the same *McDonnell Douglas* burden shifting framework. *See, e.g., Turner*, 476 F.3d at 348; *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007).

To establish a prima facie case of retaliation under Title VII, Bryant must demonstrate that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). Defendant does not dispute that Bryant engaged in protected activity (i.e. acting as witness regarding co-employees' EEO complaints and filing an EEO complaint in 2004) and that he suffered an adverse employment action when he was not selected for the GS-9 position.

13

The third element – a "causal link" – is established when the evidence shows that "the employer's decision . . . was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir.2001) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.1998)). Bryant offers no evidence demonstrating a link between his prior EEO activity and his non-selection. It is undisputed that neither of the selecting officials, Gomez or Embry, was aware of Plaintiff's prior EEO activity at the time they made the decision to select Parades for the position. Gomez Aff., Def. Ex. 8, p. 3; Embry Testimony, Def. Ex. 13, p. 155. Moreover, as related above, each applicant on the checklist was identified only with a number. Therefore, Bryant fails to raise a genuine issue of material fact regarding the causal link between his EEO activities and his non-selection. *See Manning*, 332 F.3d at 883 ("Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity.").[4] Bryant's subjective belief that retaliation occurred, standing alone, is insufficient to establish a genuine issue of fact. *See, e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985)).

For the above reasons, Plaintiff has failed to show a causal link between his protected activity and the adverse employment action and cannot establish a prima facie case of retaliation.

---

[4] In support of his retaliation claim, Bryant claims that the Chief of the CDL, Dr. Erbin Jones, knew of Bryant's prior EEO activity. Plaintiff's Complaint, pp. 1-2. There is no evidence in the summary judgment record indicating that Dr. Jones had any role in the selection of Parades and/or Plaintiff's non-selection. Evidence of Jones' knowledge of Bryant's prior activity, alone, is insufficient to create a genuine issue of material fact as to Bryant's ultimate burden – i.e, that Defendant's legitimate, nondiscriminatory reason is merely a pretext for the real, retaliatory purpose and the failure to promote him to the GS-9 position would not have occurred but for his prior protected EEO activity. *See Septimus v. University of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim as well.

CONCLUSION

For the foregoing reasons, it is ordered that Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

Signed this 21st day of February, 2008.

*Wm. F. Sanderson, Jr.*

_____
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE